IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| AMCREF FUND XXVII, LLC, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CASE NO.: 1:23-CV-166 (LAG) |
| : | |
| SYNERGY SOLUTIONS CRISP : | |
| COUNTY LP, : | |
| : | |
| Defendant. : | |

## ORDER

Before the Court are Plaintiff's and Defendant's Cross Motions for Summary Judgment. (Docs. 24–25). For the reasons below, Defendant's Motion (Doc. 25) is **GRANTED in part** and **DENIED in part**. Plaintiff's Motion (Doc. 24) is **DENIED**.

## PROCEDURAL BACKGROUND

On September 20, 2023, Plaintiff AMCREF Fund XXVII, LLC ("AMCREF") filed this action against Defendant Synergy Solutions Crisp County LP. ("Synergy") bringing claims for Breach of Contract and Attorney's Fees pursuant to O.C.G.A. § 13-6-11. (Doc. 1 ¶¶ 12–28). On July 25, 2024, Plaintiff filed Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"). (Doc. 24). On July 31, 2024, Defendant filed Defendant's Motion for Summary Judgment ("Defendant's Motion"). (Doc. 25). Each Party timely responded. (Docs. 26–28). Plaintiff did not reply. (*See* Docket). On September 17, 2024, Defendant filed a Reply. (Doc. 31). The Motions are now ripe for review. *See* M.D. Ga. L.R. 7.3, 7.3.1(A).

## FACTUAL BACKGROUND

This is an action arising out of an alleged breach of contract.[1] Plaintiff, AMCREF Fund XXVII, LLC, entered into a loan agreement with Defendant, Synergy Solutions Crisp

---

[1] The Court derives the relevant facts from the Parties' Statement of Material Facts, responses, and the record. (Docs. 24-3, 25-2, 26-1, 28-1). When evaluating the Cross Motions for Summary Judgment,

County, LP. (Doc. 24-3 ¶ 1; Doc. 26-1 ¶ 11). Plaintiff, a Delaware limited liability company with its principal place of business in Louisiana, is the "lender" under the loan agreement. (Doc. 1 ¶¶ 1–2). Plaintiff is a wholly owned subsidiary of AMCREF Community Capital, LLC. (Doc. 6). Defendant, a limited partnership operating a recycling center and ethanol production facility in Georgia, is the "borrower" under the loan agreement. (Doc. 1 ¶ 3; Doc. 25-1 at 2; Doc. 25-2 ¶ 1; Doc. 28 ¶ 1). Defendant acquired an interest in land located in Cordele, Georgia to begin operations of a recycling center and ethanol production facility. (Doc. 25-2 ¶ 1; Doc. 28-1 ¶ 1). The land was located in a low-income area which qualified for tax credits for investors. (Doc. 25-2 ¶ 2; Doc. 28-1 ¶ 2). On December 10, 2014, Defendant entered into an agreement with several entities to utilize the New Market Tax Credit incentive program and create an investment fund named COCRF Investor 28 LLC ("Investment Fund"). (Doc. 25-2 ¶¶ 3, 5; Doc. 28-1 ¶¶ 3, 5). The purpose of the Investment Fund was to make a capital investment in the recycling center and ethanol production facility. (Doc. 25-2 ¶¶ 1–2; Doc. 28-1 ¶¶ 1–2). The Plaintiff served as an intermediary for the agreement and lent $13,750,000.00 to Defendant (the "Loan"). (Doc. 25-2 ¶¶ 4, 7; Doc. 28-1 ¶¶ 4, 7).

The Plaintiff and Defendant executed a loan and security agreement "QLICI LOAN AND SECURITY AGREEMENT" that had an effective date of December 10, 2014 ("the Initial Loan Agreement"). (Doc. 24-3 ¶ 1; Doc. 26-1 at 11). The Initial Loan Agreement provided that Plaintiff would pay interest only for the first seven years of the agreement, with a lump sum "Exit Fee" due at the end of the seven years in December 2021. (Doc. 25-2 ¶ 12; Doc. 28-1 ¶ 12). The Initial Loan Agreement also required that Defendant provide Plaintiff with certain operations records upon request under Section 6.8(g) and required that Defendant provide quarterly reports to Plaintiff under Section 6.8(h). (Doc. 1-1 at 35; Doc. 25-2 ¶¶ 20–24; Doc. 28-1 ¶¶ 20–24). The promissory note for the Loan included a schedule table for payments. (Doc. 24-1 at 10–21; Doc. 25-4 at 5–12).

---

the Court "view[s] the facts in the light most favorable to the nonmoving party on each motion." *James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1251 (11th Cir. 2022) (citing *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012)).

2

From December 2014 to November 2021, Defendant paid Plaintiff a total of $254,272.00 in interest payments. (Doc. 25-2 ¶ 13; Doc. 28-1 ¶13). The Parties amended Initial Loan Agreement and Promissory Note by executing a First Amendment to the Loan Agreement on December 29, 2021 ( "Amended Loan Agreement") and an Amendment to the Promissory Note (AMCREF QLICI NOTE B) ("Promissory Amendment"). (Doc. 1-2; Doc. 24-1 at 23–34; Doc. 25-2 ¶ 19; Doc. 28-1 ¶ 19). The Amended Loan Agreement created new payment terms for the principal and interest payments and deleted the provisions of the Initial Loan Agreement that governed Defendant's reporting responsibilities. (Doc. 1-2). Article 1.1(a) provided that

> Loan payments with respect to each Note shall be as follows: (i) on each Payment Date, up to and including September 15, 2021, a payment of interest only due on the Payment Date; (ii) on December 29, 2021, a payment of interest accrued from October 1, 2021 up to and including such date, (iii) beginning on March 15, 2022 and on each Payment Date thereafter, up to and including the Note Maturity Date, a payment of principal and interest as shown in the COCRF A Note, COCRF B Note, AMCREF A Note and AMCREF B Note (as amended by the B Note Amendment), as applicable.

(*Id.* at 2; Doc. 25-2 ¶ 26; Doc. 28-1 ¶ 26). Article 1.1(b) provided that "Sections 6.8(a), 6.8(h), 6.8(l), 6.21 and 6.24 of the Agreement are hereby deleted in their entirety." (Doc. 1-2 at 2; Doc. 25-2 ¶ 24; Doc. 28-1 ¶ 24). The Promissory Amendment included a payment schedule, titled "NMTC Investment Fee Pay Schedule[,]" that had payments for interest and principal due on the first of each month. (Doc. 24-1 at 27–34; Doc. 25-4 at 5–12).

The payment terms of the Amended Loan Agreement and Promissory Amendment and whether Defendant made payment according to these terms lie at the heart of this dispute. Plaintiff claims that, under the Amended Loan Agreement and Promissory Amendment, payment was due March 1, 2022 and that Defendant has "made no payments according to the repayment schedule . . . since March of 2022." (Doc. 24-3 ¶ 7). Plaintiff further claims that, on February 2, 2023, it notified Defendant by certified mail that it was in default under the terms of the Amended Loan Agreement. (*Id.* ¶ 6 (citing Doc. 20-1)).

3

In support of its Motion for Summary Judgment, Plaintiff included the original promissory note, the original payment schedule, the Promissory Amendment, and the amended payment schedule. (Doc. 24-1 at 9–34). Plaintiff claims these documents establish that payment was due beginning March 1, 2022. (Doc. 24-3 ¶ 5). Plaintiff also included Defendant's responses to Plaintiff's requests for admissions, Defendant's objections and responses to Plaintiff's first continuing interrogatories, and a declaration from Nianah Love, the Director of Asset Management and Compliance for Plaintiff. (Doc. 24-1 at 36–52; Doc. 24-2). On September 4, 2024, Plaintiff filed a declaration from Chelsea Fitzgerald, one of Plaintiff's attorneys, which included a copy of the Notice of Default letter sent to Defendant's CEO, Matthew Piell, an email dated February 2, 2023, sent to Mr. Piell with the Default Letter attached, and a USPS delivery confirmation dated February 6, 2023. (Doc. 29). Plaintiff claims that these documents establish that Plaintiff "notified Defendant by certified mail that it was in default" and that "[Defendant] made no payments according to the loan repayment schedule . . . since March of 2022." (Doc. 24-3 ¶¶ 6–7).

Defendant claims that the Amended Loan Agreement changed the payment terms and that payment of the principal and interest was not due until March 15, 2022. (Doc. 25-1 at 6). Defendant argues that Plaintiff again modified the Loan Agreement when it sent an invoice for payment due March 1, 2022 and charged Defendant a late fee that was not originally contemplated under the Amended Loan Agreement when Defendant did not pay on March 1st. (*Id.*). Defendant argues that Plaintiff's actions constituted as waiver or novation of the Amended Loan Agreement. (*Id.* at 10–13). In support of its argument, Defendant included a declaration from Matthew Piell, the Promissory Amendment, and Defendant's Objections and Responses to Plaintiff's First Continuing Interrogatories. (Docs. 25-3–25-5). Defendant claims that the Piell declaration and the Promissory Amendment demonstrate that Defendant made two payments of $10,000 in 2022 and that that the Amended Loan Agreement created new payment terms. (Doc. 25-2 ¶¶ 26, 29, 34–35). Defendant further claims that its Objections and Responses to Plaintiff's First Continuing Interrogatories demonstrate that Defendant did not receive the notice of default. (Doc. 25-2 ¶ 36).

4

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). At summary judgment, the Court views the evidence "in the light most favorable to the non-moving party" and resolves factual disputes for the nonmoving party when doing so is supported by sufficient evidence. *Gogel*, 967 F.3d at 1134 (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007)); *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018); *Whitehead*, 979 F.3d at 1328. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam). If the movant meets their initial burden, the nonmoving party must demonstrate that there is a genuine dispute for trial. *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 557 (11th Cir. 2014) (per curiam) (citing *Clark v. Coats & Clark, Inc.*, 929

5

F.2d 604, 608 (11th Cir. 1991)). The nonmovant must "go beyond the pleadings and . . . present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 324). "All material facts contained in the movant's statement which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." M.D. Ga. L.R. 56; *see Mason v. George*, 24 F. Supp. 3d 1254, 1260 (M.D. Ga. 2014).

"Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed[.]" *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (per curiam) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)). Cross motions may, however, "be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Id.* at 1555–56. Nevertheless, the Court must evaluate each motion separately, "as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004); *see also D & H Therapy Assocs., LLC v. Boston Mut. Life Ins. Co.*, 640 F.3d 27, 34 (1st Cir. 2011) ("When there are cross-motions for summary judgment, the court must consider each motion separately, drawing all inferences in favor of each non-moving party in turn." (citation omitted)).

## DISCUSSION

### I. Failure to Make Scheduled Interest and Principal Payments

Plaintiff and Defendant each move for summary judgment on Plaintiff's breach of contract claim (Count IA). The elements of a breach of a contract claim are (1) a valid contract, (2) material breach of its terms, and (3) resultant damages to a party that has the right to complain about the contract being broken. *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 664 (11th Cir. 2015) (per curiam); *see also Budget Rent-a-Car of*

6

*Atlanta, Inc. v. Webb*, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996). There is a factual dispute regarding the terms of the contract, whether Defendant breached the terms of the Amended Loan Agreement, and whether the Parties modified the agreement by their conduct.

Plaintiff claims that, in addition to the December 29, 2021 Amended Loan Agreement that created new payment terms and deleted certain provisions of the Initial Loan Agreement, the Parties also "executed an allonge to the AMCREF B Note, entitled Amendment to Promissory Note [(Promissory Amendment)]. . . [which] established a note repayment schedule." (Doc. 28 at 3). Plaintiff argues that it is entitled to Summary Judgment on Count IA because "[i]t is . . . undisputed that [Defendant] has not made payments as required by the Loan Agreement" and that, when "[a] creditor is in possession of a valid and signed promissory note[, it] has a prima facie right to repayment, unless the debtor can establish a valid defense." (Doc. 24-1 at 3–5 (first citing *Smith v. Gordon*, 598 S.E.2d 92 (Ga. Ct. App. 2004); and then citing *City of Bremen v. Regions Bank*, 559 S.E.2d 440 (Ga. 2002)). Plaintiff represents that Nianah Love, the Director of Asset Management and Compliance for Plaintiff, is in possession of the original promissory note and the Promissory Amendment which includes a payment schedule with a payment of principal and interest scheduled for March 1, 2022. (*Id.* at 5; *see* Doc. 24-2).

Defendant argues, both in its Motion for Summary Judgment and in its response to Plaintiff's Motion, that Plaintiff cannot show that Defendant breached the Amended Loan Agreement, that Plaintiff waived strict enforcement of the Amended Loan Agreement, and that Plaintiff replaced the Amended Loan Agreement by novation. (Doc. 25-1 at 9–15; Doc. 26 at 8–15). According to Matthew Piell, Defendant's CEO, "the Amended Agreement specified [that] payments of principal and interest on the Amended Subject Note were not to begin until March 15, 2022[.]" (Doc. 25-3 ¶¶ 28). Defendant argues that the undisputed evidence shows that the Parties began to operate under new terms when Plaintiff "charged [Defendant] an arbitrary $250 late fee which was not provided for in either the Amended Agreement or the Amended Subject Note." (*Id.* ¶ 29; Doc. 26-1 ¶¶ 24–30). The Parties agree that, on December 29, 2021, they executed the Amended Loan Agreement and Promissory Amendment. (Doc. 28 at 3; Doc. 26-1 at 11–12). According to

7

Plaintiff, however, the payment schedule appended to the Promissory Amendment mandates that a payment of principal and interest was due on March 1, 2022, and on the first of each following month. (Doc. 24-1 at 5, 23, 27; *see* Doc. 24-2 ¶ 5). According to Defendant, Section 1.1(a) of the Amended Loan Agreement mandates that payments of principal and interest were set to begin on March 15, 2022. (Doc. 26 at 6).

Because the Parties disagree as to the interpretation of the Amended Loan Agreement and the Promissory Amendment, the Court must apply the rules of contract construction to interpret the amended documents. Under Georgia law, "[t]he construction of a contract is a question of law for the court." *Irvin v. Laxmi, Inc.*, 467 S.E.2d 510, 512 (Ga. 1996) (footnote omitted).Under Georgia law,

> [T]he trial court must [first] decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*Langley v. MP Spring Lake, LLC*, 834 S.E.2d 800, 804 (Ga. 2019) (citation omitted). "The language is ambiguous if it is susceptible to more than one meaning." *Azzouz v. Prime Pediatrics, P.C.*, 675 S.E.2d 314, 317 (Ga. Ct. App. 2009) (citation omitted).

Here, the language of the amended documents is ambiguous. Article 1.1 (a) of the Amended Loan Agreement clearly states that "beginning on March 15, 2022 and on each Payment Date thereafter" Defendant shall pay Plaintiff "a payment of principal and interest as shown in the COCRF A Note, COCRF B Note, AMCREF A Note and AMCREF B Note (as amended by the B Note Amendment)[.]" (Doc. 1-2 at 2). The Promissory Amendment, which is referenced in the Amended Loan Agreement and was executed on the same day, sets forth a Payment Schedule showing an interest payment of $3,843.66 and a principal payment of $30,227.02 due on March 1, 2022. (Doc. 24-1 at 27; Doc. 25-4 at 5). The conflicting terms of these two documents creates an ambiguity to which the Court must

8

apply the rules of construction. *See Envision Printing, LLC v. Evans*, 786 S.E.2d 250, 252 (Ga. Ct. App. 2016).

"The cardinal rule of construction is to ascertain the intention of the parties." O.C.G.A. § 13-2-3. "Enforcement of the parties' intent is superior to the other rules of construction[.]" *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 820 (11th Cir. 1999) (citation omitted). Moreover, courts are instructed "to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect [and] . . . if possible, construe a contract so as not to render any of its provisions meaningless." *Young v. Stump*, 669 S.E.2d 148, 150 (Ga. Ct. App. 2008); *see also* O.C.G.A. § 13-2-2 (4) ("The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part[.]"). Furthermore, "[i]f the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred[.]" O.C.G.A. § 13-2-2(5). "Under the statutory rules of contract construction, if a contract is capable of being construed two ways, it will be construed against the preparer and in favor of the non-preparer." *Hertz Equip. Rental Corp. v. Evans*, 397 S.E.2d 692, 694 (Ga. 1990) (citing O.C.G.A. §13-2-2(5)). While Defendant is undertaking the obligation to make payments of principal and interest to Plaintiff, it is not clear from the record who drafted the amended agreements.

As neither Party addressed how the rules of construction apply to the Amended Loan Agreement and Promissory Amendment, the Court is unable to determine the intent of the Parties, and the dispute cannot be resolved without rendering either the language in the Amended Loan Agreement or the language in the Promissory Agreement void. The Amended Loan Agreement clearly makes the first principal and interest payment due "beginning on March 15, 2022[,]" while the Promissory Amendment is equally as explicit setting forth a payment schedule requiring the payment of principal and interest on March 1, 2022. (*See* Doc. 1-2 at 2; Doc. 24-1 at 27; Doc. 25-4 at 5). The Parties have pointed to no language in the contract that would resolve this conflict. Accordingly, as the ambiguity remains, there is a genuine issue of material fact, and summary judgment is not appropriate.

Furthermore, a genuine issue of material facts exists as to whether Defendant made any payments of principal and interest. The Parties dispute whether any payments of principal and interest were made in 2022. Evidence in the record supports Plaintiff's claim that Defendant did not make any payments at all in 2022 and that Defendant began making past due payments after Defendant received the Notice of Default in February of 2023. In her Declaration, Nianah Love declares, "[Defendant] made no payments on the loan during the year 2022 as required by the Loan Agreement." (Doc. 24-2 ¶ 5). She also declared that "[s]ince receipt of the Notice of Default, [Defendant] has made four (4) ten thousand-dollar payments on the outstanding indebtedness leaving a past due balance as of July 25, 2024 of $1,192,555.70." (*Id.* ¶ 7). But, there is also evidence that Defendant did make payments in 2022. In his declaration, Matthew Piell declares that Defendant made two payments of $10,000 on September 2, 2022, and September 13, 2023. (Doc. 25-3 ¶ 32).

## II.     Modification of the Contract

Defendant argues that it is entitled to summary judgment on Count IA because it has "put forth evidence . . . that the [P]arties were, in fact, operating under a modified agreement, evidenced by Plaintiff's imposition of fees not provided for in the Amended Agreement and by Plaintiff accepting payments following a different schedule than what was laid out therein." (Doc. 25-1 at 11). Defendant further argues that Plaintiff either waived strict enforcement of the agreement or replaced their agreement by novation. (*Id.* at 10–13). Plaintiff argues that the Loan Agreement provides that it may not be changed, waived, discharged or terminated by oral amendments. (Doc. 28 at 8).

Georgia law provides that

> Even if the contract provides it may not be changed except by writing, parties may subsequently by mutual consent enter into a new agreement at variance with the other. The modified agreement need not be expressed in words, in writing or signed, but the parties must manifest their intent to modify the original contract. Whether there has been such a mutual and intended departure so as to make practically a new agreement is generally a question for the fact finder to determine.

10

*Lynx Real Est., Inc. v, F.A.L. Investments, LLC*, 718 S.E.2d 552, 555 (Ga. Ct. App. 2011) (citing *Marathon Oil Co. v. Hollis*, 305 S.E.2d 864 (Ga. Ct. App. 1983)). "Where . . . extrinsic evidence [of modification] exists and is disputed, the question of whether a party has assented to the [modified] contract is generally a matter for the jury." *Kilfeather v. Consilium 1, LLC*, No. 1:12-CV-3412-AT, 2014 WL 12572682 at *10 (N.D. Ga. Mar. 20, 2014) (citing *Lynx Real Estate, Inc.*, 718 S.E.2d at 555) (other citation omitted). Like modification, waiver and novation also are typically matters for the jury. *See Yash Sols. v. New York Glob. Consultants Corp.*, 834 S.E.2d 126, 134 (Ga. Ct. App. 2019); *Mil-Spec Indus. Corp. v. Pyrotechnic Specialties, Inc.*, 586 S.E.2d 7, 10 (Ga. Ct. App. 2003). Accordingly, Defendant is not entitled to summary judgment on these grounds.

### III. Failure to Provide Financial Statements and Required Reports

Defendant seeks summary judgment on Plaintiff's claim that, pursuant to Section 6.8(g), it requested "information regarding payments not made by [Defendant]" and that Defendant failed to provide the requested information. (Doc. 25-1 at 13–14; *see* Doc. 1 ¶ 18). Plaintiff claims that Defendant failed to provide "quarterly financial statements for the calendar quarters ending March 31, 2022, June 30, 2022, . . . September 30, 2022, . . . December 31, 2022, March 31, 2022, and June 30, 2023[,]" as required under Section 6.8(h). (Doc. 1 ¶¶ 19–23). Defendant argues that "the undisputed evidence before the Court is that [Defendant] did not receive any requests for documents pursuant to section 6.8(g) of the Amended Agreement from December 2021 onwards" and that "section 6.8(h) was deleted from the Amended Agreement for the dates Plaintiff specifies as containing the breach[.]" (Doc. 25-1 at 13–15).

Section 6.8(g) of the Loan Agreement provides that, "within thirty [] days of a written request . . . from [Plaintiff], [Defendant] shall provide to [Plaintiff] such other information reasonably relating to the condition or operations. . . as [Plaintiff] may from time to time request[.]" (Doc. 1-1 at 35). Article 1.1(b) of the Amended Agreement, which was signed by the Parties December 29, 2021, deleted Section 6.8(h) of the Loan Agreement requiring that Defendant provide certain reports and financial statements "no later than thirty [] days after the end of each calendar quarter" in its entirety. (*Id.* at 35; *see*

11

Doc. 1-2 at 2; Doc. 25-2 ¶¶ 22–25; Doc. 28-1 ¶¶ 22–25). Moreover, Plaintiff has pointed to no evidence that it made requests which triggered Defendant's obligations under Section 6.8(g) or otherwise responded to Defendant's Motion for Summary Judgment as to Count IB.

Plaintiff's failure to address Defendant's Motion for Summary Judgment as to Count IB constitutes abandonment of the claim. *See Wood v. City of Warner Robins Georgia*, No. 5:19-CV-00319-TES, 2022 WL 987991 (M.D. Ga. Mar. 31, 2022) (granting summary judgment to Defendants with respect to Plaintiff's abandoned retaliation claim); *see also Clark v. City of Atlanta*, 544 F. App'x 848, 855 (11th Cir. 2013) (per curiam) (holding that the district court "properly treated as abandoned the [plaintiffs'] excessive force and state law claims, which were alleged in the complaint, but not addressed in opposition to the motion for summary judgment"). "The parties bear the burden of formulating arguments at summary judgment. It is not the district court's responsibility to 'distill every potential argument that could be made based on the materials before it on summary judgment.'" *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 758 F. App'x 785, 790 (11th Cir. 2018) (per curiam) (quoting *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir. 1995) (en banc)) (other citations omitted). "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Id.* (citation omitted). Accordingly, summary judgment is appropriate as to Plaintiff's Count IB.

## CONCLUSION

Accordingly, the Court **DENIES** summary judgment on Count IA for both Parties and **GRANTS** Defendant's Motion for Summary Judgment on Count IB. Defendant's Motion (Doc. 25) is **GRANTED in part** and **DENIED in part**. Plaintiff's Motion (Doc. 24) is **DENIED**.

**SO ORDERED**, this 24th day of March, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**